IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| Chelsea E. MANNING<br>    1300 North Warehouse Road,<br>    Fort Leavenworth, KS 66027-2304,<br>    Plaintiff, | ) ) ) ) ) ) | |
| v. | ) ) | Civil Action No. 1:16-CV-02307-CRC |
| The Honorable Daniel R. COATS,<br>    Director of National Intelligence,<br>    Office of the Director of National<br>    Intelligence,<br>    Washington, DC 20511, | ) ) ) ) ) ) ) | |
| The Honorable Jefferson B. SESSIONS III,<br>    Attorney General,<br>    950 Pennsylvania Avenue, NW,<br>    Washington, DC 20530-0001, | ) ) ) ) ) | |
| U.S. DEPARTMENT OF JUSTICE,<br>    950 Pennsylvania Avenue, NW,<br>    Washington, DC 20530-0001, | ) ) ) ) | |
| The Honorable James B. COMEY,<br>    Director,<br>    Federal Bureau of Investigation,<br>    935 Pennsylvania Avenue, NW,<br>    Washington, DC 20535-0001, | ) ) ) ) ) ) | |
| FEDERAL BUREAU OF INVESTIGATION,<br>    935 Pennsylvania Avenue, NW,<br>    Washington, DC 20535-0001, | ) ) ) ) | |
| The Honorable James N. MATTIS,<br>    Secretary of Defense,<br>    1400 Defense Pentagon,<br>    Washington, DC 20301-1400, | ) ) ) ) ) | |
| U.S. DEPARTMENT OF DEFENSE,<br>    1400 Defense Pentagon,<br>    Washington, DC 20301-1400, | ) ) ) ) ) | |

| | |
|---|---|
| Admiral Michael S. ROGERS,<br>        Director, National Security Agency,<br>        Commander, U.S. Cyber Command,<br>        Chief, Central Security Service,<br>        9800 Savage Road, Suite 6272,<br>        Fort Meade, MD 20755-6000, | ) |

Admiral Michael S. ROGERS,                    )
        Director, National Security Agency,   )
        Commander, U.S. Cyber Command,        )
        Chief, Central Security Service,      )
        9800 Savage Road, Suite 6272,         )
        Fort Meade, MD 20755-6000,            )
                                              )
NATIONAL SECURITY AGENCY,                     )
        9800 Savage Road, Suite 6272,         )
        Fort Meade, MD 20755-6000,            )
                                              )
UNITED STATES of AMERICA,                     )
        Defendants.                           )
_____      )

## AMENDED COMPLAINT FOR
## INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

1.      Plaintiff Chelsea E. Manning seeks declaratory and injunctive relief from the Defendants. The Plaintiff is being subjected to clandestine and intrusive electronic surveillance and physical searches, including computer network exploitation. During this surveillance, the Plaintiff was subjected to a "false flag" counterintelligence operation conducted by Defendants that simulated a terrorist attack, kidnapping, and hostage situation. The Plaintiff brings this action seeking redress for the ongoing violations of the U.S. Constitution relating to the surveillance and "false flag" operation. The Plaintiff also seeks damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L. Ed. 2d 619 (1971) from the Defendants for cruel and unusual punishment, and physical and psychological injuries relating to the "false flag" counterintelligence operation.

## NATURE OF THE ACTION

2.      This action seeks declaratory and injunctive relief to redress the Defendants application and execution of orders approved by the Foreign Intelligence Surveillance Court. This action also seeks declaratory and injunctive relief and damages under *Bivens*, 403 U.S. 388,

2

for the conduct of a sophisticated "false flag" counterintelligence operation conducted by Defendants that simulated a terrorist attack, kidnapping, and hostage situation.

3.     The Defendants are currently conducting a widespread and expansive counterintelligence operation involving the Plaintiff.  Additionally, the Defendants are currently conducting clandestine and intrusive electronic surveillance and physical searches that involve the Plaintiff, without valid grounds or any reasonable probable cause.   Meanwhile, the Defendants have also conducted a sophisticated "false flag" counterintelligence operation that simulated a terrorist attack, kidnapping, and hostage situation.  The Defendants have violated the U.S. Constitution by violating the Plaintiff's rights to freedom of speech, freedom of association, to petition the government for redress, to be secure against unreasonable searches and seizures, to due process, and to not be subjected to cruel and unusual punishment.

## JURISDICTION

4.     This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. § 1331, because this complaint arises under the U.S. Constitution.

5.     The request for declaratory relief is made pursuant to 28 U.S.C. § 2201, due to an actual controversy existing between the Plaintiff and the Defendants over rights guaranteed by the U.S. Constitution.

6.     This Court also has personal jurisdiction over each of the Defendants, all of whom are sued acting in their official capacities.

## VENUE

7.     Venue for this action is proper in this district pursuant to 28 U.S.C. § 1391 (e)(1)(A) because at least one of the Defendants in this action officially resides in this district and, pursuant to 28 U.S.C. §1391 (e)(1)(B), because a substantial part of the acts or omissions in the Plaintiff's claim occurred in this district.

## PARTIES

*Plaintiff*

8.    Plaintiff Chelsea E. Manning is a United States citizen.

9.    The Plaintiff is a former member of the U.S. Intelligence Community ("IC") and a former intelligence analyst for the U.S. Army under Defendant Department of Defense ("DoD").

*Defendants*

10.    Defendant Daniel R. Coats is the Director of National Intelligence ("DNI"). Director Coats serves as the head of the IC, acts as the President of the National Security Council and Homeland Security Council for intelligence matters related to national security, and oversees and directs the National Intelligence Program pursuant to 50 U.S.C. § 3023 (b).    He is responsible for the Office of the Director of National Intelligence ("OCNI"), the IC and their compliance with federal law, and regulations promulgated under such laws, including the laws at issue in this action.  He is made a party to this action pursuant to Rule 4 (i), F.R. Civ. P., acting in his official capacity as the DNI.

11.    Defendant Jefferson B. Sessions, III is the U.S. Attorney General.   Attorney General Sessions serves as the head of Defendant Department of Justice ("DoJ") pursuant to 28 U.S.C. § 503.   He is responsible for the DoJ and its components and agencies, and their compliance with federal law, and regulations promulgated under such laws, including the laws at issue in this action.  He is made a party to this action pursuant to Rule 4 (i), F.R. Civ. P., acting in his official capacity as the U.S. Attorney General.

12.    Defendant Department of Justice is an Executive Department of the U.S. government pursuant to 28 U.S.C. § 501.

13.    Defendant James B. Comey is the Director of the Federal Bureau of Investigation. Director Comey serves as the head of Defendant Federal Bureau of Investigation ("FBI"). He is responsible for the FBI and its compliance with federal law, and regulations promulgated under such laws, including the laws at issue in this action. He is made a party to this action pursuant to Rule 4 (i), F.R. Civ. P., acting in his official capacity as the Director of the FBI.

14.    Defendant Federal Bureau of Investigation is a component of the DoJ pursuant to 28 U.S.C. § 532. The FBI is the investigative component of the DoJ. The FBI conducts and oversees domestic intelligence collection, investigations, analysis, and counterintelligence operations.

15.    Defendant James N. Mattis is the Secretary of Defense. Secretary Mattis serves as the head of Defendant Department of Defense ("DoD") pursuant to 10 U.S.C. § 113. Secretary Mattis has authority, direction, and control over the DoD pursuant to 10 U.S.C. § 113 (b). He is responsible for the DoD and its military departments, components and agencies, and their compliance with federal law, and regulations promulgated under such laws, including the laws at issue in this action. He is made a party to this action pursuant to Rule 4 (i), F.R. Civ. P., acting in his official capacity as the Secretary of Defense.

16.    Defendant Department of Justice is an Executive Department of the U.S. government pursuant to 10 U.S.C. § 111. The DoD oversees and conducts operations in support of the national defense for the U.S. government. The DoD consists of several military departments, components, and agencies, including Defendant National Security Agency ("NSA"), the Central Security Service ("CSS") and the U.S. Cyber Command ("CYBERCOM").

17.    Defendant Admiral Michael T. Rogers is the Director of the National Security Agency, the Chief of the Central Security Service, and Commander U.S. Cyber Command.

Admiral Rogers is the head of the NSA pursuant to 50 U.S.C. § 3602. He is also the Commander of CYBERCOM under the DoD. He is responsible for the NSA, CSS, and CYBERCOM, and their compliance with federal law, and regulations promulgated under such laws, including the laws at issue in this action. He is made a party to this action pursuant to Rule 4 (i), F.R. Civ. P., acting in his official capacity as the Director of NSA, the Chief of CSS, and the Commander of CYBERCOM.

18.     Defendant National Security Agency is a component of the DoD pursuant to 50 U.S.C. § 3601. The NSA conducts signal and electronic intelligence collection, and provides cryptography and cryptanalysis services throughout the U.S. government, including all the other Defendants.

19.     Defendant United States of America is made a party to this action pursuant to 5 U.S.C. § 702.

## FACTUAL ALLEGATIONS

*Background of the Plaintiff*

20.     The Plaintiff was born in the United States, and is a citizen of the United States by natural birth. She is considered a "U.S. person" pursuant to 50 U.S.C. § 1801 (i).

21.     Plaintiff is a former member of the IC. She worked as an all-source intelligence analyst for the U.S. Army under the DoD.

22.     Plaintiff operated in an official capacity under the authority of the DoD provided by section 1.7. (f) of Executive Order 12333 and the National Security Act of 1947, as amended, 50 U.S.C. § 3001 *et seq.*, between August 2008 and May 2010.

23.     Plaintiff was granted a TOP SECRET/Sensitive Compartmentalized Information (TS/SCI) security clearance by the DoD between January 2009 and May 2010.

24.     Plaintiff deployed to Baghdad, Iraq in October 2009, serving as an intelligence analyst in various capacities for the DoD.  She regularly utilized her TS/SCI clearance with daily, routine access to records in support of her position.

25.     Plaintiff has intimate knowledge and experience with the application process and execution of the provisions of section 1.7. (f) of Executive Order 12333 and the Foreign Intelligence Surveillance Act of 1978, as amended ("FISA"), 50 U.S.C. § 1801 *et seq.*

26.     Plaintiff was ordered into confinement on May 27, 2010 by the U.S. Army for numerous offenses relating to the unlawful disclosure of information.

27.     Plaintiff was brought before a trial by general court-martial on June 3, 2013.  She was acquitted of some of the charges in part, and convicted of other charges in part on July 30, 2013.  She was sentenced to 35 years in confinement on August 21, 2013.

28.     The Plaintiff was transferred to the U.S. Disciplinary Barracks ("USDB"), a joint military prison in Fort Leavenworth, Kansas on August 22, 2013.

29.     Plaintiff petitioned for a legal change of name before the District Court of Leavenworth County, Kansas.  Her petition was granted by the court, and her name was changed from Bradley Edward Manning to Chelsea Elizabeth Manning on April 23, 2014.

30.     Plaintiff maintains limited access to classified information under a security clearance pursuant to the Classified Information Procedures Act of 1980, as amended ("CIPA"), 18 U.S.C. § 1 *et seq.*

31.     On January 17, 2017, President Obama commuted the Plaintiff's sentence to confinement to time served plus 120 days. The Plaintiff will be released from the USDB on May 17, 2017.

32.     The Plaintiff is a well known public figure, both nationally and worldwide.

33.     The Plaintiff writes regularly for many print and online publications, including the *Guardian*, and *Medium.com.*

34.     The Plaintiff also frequently responds to requests for interviews for online, print, and television media, often through an assistant or volunteer.

35.     The Plaintiff is not an agent of a foreign power, as defined by § 101 (b)(2) of FISA, 50 U.S.C. § 1801 (b)(2).

36.     The Plaintiff is an aggrieved person within the meaning of § 101 (k) of FISA, 50 U.S.C. § 1801 (k).

### *Background of the Foreign Intelligence Surveillance Act*

37.     Congress enacted the Foreign Intelligence Surveillance Act of 1978, as amended, 50 U.S.C. §§ 1801 *et seq.*, in order to regulate the foreign intelligence surveillance activities conducted by the U.S. government.

38.     FISA established a special court system to review applications submitted *ex parte* by the U.S. government for orders relating to the collection of foreign intelligence, both domestically and abroad, by different clandestine or covert means.

39.     Pursuant to § 103 (a)(1) of FISA, 50 U.S.C. § 1803 (a)(1), the Foreign Intelligence Surveillance Court ("FISC") is composed of 11 district court judges chosen by the Chief Justice of the U.S. Supreme Court from at least seven different judicial circuits.

40.     The FISC has the authority to review any applications by the U.S. government involving U.S. citizens that are identified as agents of a foreign power under § 101 (b)(2) of FISA, 50 U.S.C. § 1801 (b)(2).

41.     A special appellate court, the Foreign Intelligence Surveillance Court of Review ("FISCR") was established under § 103 (a)(2) of FISA, 50 U.S.C. § 1803 (a)(2).

42.     The FISCR reviews only decisions by the FISC judges that are appealed *ex parte* by the U.S. government for any applications that are denied.

43.     The FISC and FISCR operate under the provisions of FISA as a separate entity from the U.S. district courts.

44.     The FISC and FISCR only accept applications and hear arguments from the U.S. government under Titles I and III of FISA, 50 U.S.C. §§ 1801 *et seq.*, 1821 *et seq.*

45.     The FISC and the FISCR generally operate in near total secrecy.

46.     The FISC and the FISCR rarely published any of their decisions or opinions prior to 2013, and still rarely issue any public opinions.

47.     The FISC and FISCR are not courts that are authorized under Article III of the U.S. Constitution.

*Electronic Surveillance under Title I of FISA*

48.     Under Title I of FISA, 50 U.S.C. §§ 1801 *et seq.*, electronic surveillance has four related definitions under § 101 (f) of FISA, 50 U.S.C. 1801 (f).

49.     However, the definitions under § 101 (f) of FISA, 50 U.S.C. § 1801 (f), generally cover only the passive methods of collecting foreign intelligence information by electronic means in domestic U.S. territory.

50.     Applications for electronic surveillance submitted under Title I of FISA, 50 U.S.C. §§ 1801 *et seq.*, require an officer of the U.S. government to provide the identity, if known, or a description of a specific target under § 104 (a)(2) of FISA, 50 U.S.C. § 1804 (a)(2).

51.     Additionally, applications for electronic surveillance require a senior U.S. government official, under § 104 (a)(6) of FISA, 50 U.S.C. § 1804 (a)(6), to specify one of the types of foreign intelligence information being sought in § 101 (e) of FISA, 50 U.S.C. § 1801 (e).

52.     The certifying official for the application for electronic surveillance must also state under § 104 (a)(6) of FISA, 50 U.S.C. § 1804 (a)(6), that a significant purpose of seeking the information sought is to obtain foreign intelligence information, and that such information cannot reasonably be obtained by normal investigative techniques.

53.     Lastly, pursuant to § 104 (d) of FISA, 50 U.S.C. § 1801 (d), the application for electronic surveillance must be subjected to a personal review by either the Attorney General, or on behalf of the Attorney General by the Acting Attorney General, the Deputy Attorney General, or the Assistant Attorney General for National Security.

54.     The Assistant Attorney General for National Security, as specified under 28 U.S.C. § 507A, normally acts as the certifying official under § 104 (d) of FISA, 50 U.S.C. § 1801 (d).

55.     Normally, after review by the FISC, an order is issued by a FISC judge approving the electronic surveillance under § 105 of FISA, 50 U.S.C. § 1805.

56.     Pursuant to § 105 (a)(2)(A) of FISA, 50 U.S.C. § 1805 (a)(2)(A), the FISC order provides findings that there is probable cause to believe that the target of the electronic surveillance is a foreign power or an agent of a foreign power, as defined by § 101 (b) of FISA, 50 U.S.C. § 1801 (b).

57.     However, no U.S. person, as defined by § 101 (i) of FISA, 50 U.S.C. § 1801 (i), should be considered for electronic surveillance under § 105 (a)(2)(A) of FISA, 50 U.S.C. §

1805 (a)(2)(A), as a foreign power or an agent of a foreign power, as defined by § 101 (b) of FISA, 50 U.S.C. § 1801 (b), for activities protected by the First Amendment of the U.S. Constitution.

58.     Orders approved by the FISC under Title I of FISA, 50 U.S.C. §§ 1801 *et seq.*, are required to provide the duration of the order for any period necessary to execute the order up to 90 calendar days under § 105 (d)(1) of FISA, 50 U.S.C. § 1805 (d)(1).

59.     Pursuant to § 106 (f) of FISA, 50 U.S.C. § 1806 (f), when an approved order for electronic surveillance is challenged by an aggrieved person, as defined by § 101 (k) of FISA, 50 U.S.C. § 1801 (k), than any information obtained by, or contained within, the application and order can be ordered by a U.S. district court to be submitted *ex parte* and reviewed *in camera*.

*Physical Searches under Title III of FISA*

60.     Under Title III of FISA, 50 U.S.C. §§ 1821 *et seq.*, a physical search is defined by § 301 (5) of FISA, 50 U.S.C. § 1821 (5), as any physical intrusion within U.S. territory into locations that result in a seizure, reproduction, inspection, or alteration of information, material, or property.

61.     Each application for a physical search submitted under Title III of FISA, 50 U.S.C. §§ 1821 *et seq.*, requires an officer of the U.S. government to provide the identity, if known, or a description of a specific target under § 303 (a)(2) of FISA, 50 U.S.C. § 1823 (a)(2).

62.     Applications for physical searches also require a senior U.S. government official, under § 303 (a)(6) of FISA, 50 U.S.C. § 1823 (a)(6), to specify one of the types of foreign intelligence information being sought in § 101 (e) of FISA, 50 U.S.C. § 1801 (e).

63.     The certifying official for the application for a physical search must also state under § 303 (a)(6) of FISA, 50 U.S.C. § 1823 (a)(6), that a significant purpose of seeking the

information sought is to obtain foreign intelligence information, and that such information cannot reasonably be obtained by normal investigative techniques.

64.     Lastly, pursuant to § 303 (d) of FISA, 50 U.S.C. § 1823 (d), the application for a physical search must be subjected to a personal review by either the Attorney General, or on behalf of the Attorney General by the Acting Attorney General, the Deputy Attorney General, or the Assistant Attorney General for National Security.

65.     The Assistant Attorney General for National Security, as specified under 28 U.S.C. § 507A, normally acts as the certifying official under § 303 (d) of FISA, 50 U.S.C. § 1823 (d).

66.     After a review by the FISC, an order is typically issued by the FISC judge that approves the physical search under § 304 of FISA, 50 U.S.C. § 1824.

67.     Pursuant to § 304 (a)(2)(A) of FISA, 50 U.S.C. § 1824 (a)(2)(A), the FISC order must provide findings that there is probable cause to believe that the target of the physical search is a foreign power or an agent of a foreign power, as defined by § 101 (b) of FISA, 50 U.S.C. § 1801 (b).

68.     However, no U.S. person, as defined by § 101 (i) of FISA, 50 U.S.C. § 1801 (i), should be considered for physical searches under § 304 (a)(1)(A) of FISA, 50 U.S.C. § 1824 (a)(2)(A), as a foreign power or an agent of a foreign power, as defined by § 101 (b) of FISA, 50 U.S.C. § 1801 (b), for activities protected by the First Amendment of the U.S. Constitution.

69.     Orders approved by the FISC under Title III of FISA, 50 U.S.C. §§ 1821 *et seq.*, are required to provide the duration of the order for any period necessary to execute the order up to 90 calendar days under § 304 (d)(1) of FISA, 50 U.S.C. § 1824 (d)(1).

70.     Pursuant to § 305 (g) of FISA, 50 U.S.C. § 1825 (g), when an approved order for a physical search is challenged by an aggrieved person, as defined by § 101 (k) of FISA, 50 U.S.C. § 1801 (k), than any information obtained by, or contained within, the application and order can be ordered by a U.S. district court to be submitted *ex parte* and reviewed *in camera.*

*Applications under Titles I and III of FISA involving the Plaintiff*

71.     Defendants FBI and DoJ are currently leading a broad-ranging and sweeping counterintelligence investigation into the Plaintiff and her associates.

72.     This national security investigation is being conducted by the Counterespionage Unit ("CES") of the Washington Field Office ("WFO") of the FBI.

73.     All of the other Defendants are involved in the FBI investigation in some manner.

74.     In the months prior to October 3, 2016, the National Security Division ("NSD") of Defendant DoJ, along with analysts and agents from Defendant FBI submitted applications for electronic surveillance involving the Plaintiff under Title I of FISA, 50 U.S.C. § 1801 *et seq.* to the FISC in support of the FBI's CES investigation.

75.     The CES agents and analysts normally use FISC approved electronic surveillance to "circle a target" for weeks to months at a time, before initiating any further investigative actions.

76.     At some point, in the weeks prior to October 3, 2016, the DoJ's NSD, and the FBI's CES applied for approval for physical searches under Title III of FISA, 50 U.S.C. §§ 1821 *et seq.*

77.     All the applications submitted to the FISC involving the Plaintiff were certified pursuant to §§ 104 (d) and 303 (d) of FISA, 50 U.S.C. §§ 1801 (d) and 1823 (d), on behalf of Defendant Attorney General, by the Assistant Attorney General for National Security.

78.     More applications and extensions of pre-existing approved orders submitted by the DoJ and the FBI, and subsequently certified by the Attorney General have been filed since October, 2016.

79.     At least some of the electronic surveillance and physical searches under FISA have now been executed in whole or in part, on multiple occasions.

80.     The Plaintiff is not currently being, and has not been in the past, officially notified of any applications or orders approved or denied by the FISC.

81.     The Defendants are violating the Plaintiff's right to due process of law by submitting applications involving the Plaintiff under both Titles I and III of FISA, 50 U.S.C. §§ 1801 *et seq.*, 1821 *et seq.*, by not informing the Plaintiff or allowing her the ability to challenge the applications and orders.

*"Circling the Target"—The Electronic Surveillance under Title I involving the Plaintiff*

82.     In support of the CES counterintelligence investigation, Defendants DoJ and FBI are conducting sweeping and broad electronic surveillance on the Plaintiff.

83.     The broad electronic surveillance involving the Plaintiff has affected dozens, and possibly several hundred U.S. persons physically near and associated with, or in communication with the Plaintiff.

84.     This pool of the Plaintiff's associates includes her friends, her family, her attorneys, her medical providers, hundreds of military prison officials and staff, and hundreds of inmates at the USDB.

85.     Using the FISA approved electronic surveillance methods provided by Defendant National Security Agency, agents and analysts at CES have swept up virtually every form of

electronic transmissions and traffic available to them that even tangentially involves the Plaintiff and her associates.

86.     This electronic surveillance of the Plaintiff and her associates uses all four passive forms of electronic surveillance provided under § 101 (f) of FISA, 50 U.S.C. § 1801 (f).

87.     The simplest form of electronic surveillance, currently being used at all times, collects transmissions from all wire communications and telephony channels used by the Plaintiff, along with any telephonic or internet locations that are physically near her, or a selected pool of her associates.

88.     The more complex and sophisticated forms of surveillance involve either physically installing electronic surveillance equipment at locations the Plaintiff resides at, or is likely to visit, or by monitoring multiple wireless frequencies for signals within close proximity of the Plaintiff using one of several types of mobile or portable signal collection platforms provided to the FBI by the NSA.

89.     All forms of electronic surveillance involving the Plaintiff are currently being conducted by technicians and experts provided to Defendants DoJ and FBI by Defendants DoD and NSA, in support of the CES counterintelligence investigation.

*"Sneak and Peek"—The Physical Searches under Title III involving the Plaintiff*

90.     The FBI's CES agents and analysts "circled the target," namely the Plaintiff and her associates, for several weeks or months using electronic surveillance.

91.     Beginning as early as October 3, 2016, but perhaps even earlier that year, the Defendants began conducting clandestine physical searches approved under Title III of FISA, 50 U.S.C. §§ 1821 *et seq.*

92.     The physical searches involving the Plaintiff are referred to by FBI agents and analysts as "sneak and peek" searches.

93.     The first round of physical searches known to the Plaintiff was conducted at the USDB, while the Plaintiff was still confined as a prisoner.

94.     Hundreds of staff and inmates live and work at the USDB at any given moment.

95.     In order to avoid detection, and to maintain "plausible deniability" the FBI's CES agents and other Defendants created a cover story to conduct clandestine searches of select areas of the USDB.

96.     The Defendants' cover story was that a tool went missing from a prison work detail, near the Plaintiff's prison work area.

97.     Missing tools are very rare and very serious events that would normally merit a prison to conduct frequent and intensive physical searches on all personnel, inmates, and property.

98.     The majority of USDB staff were unaware of the CES agents' true purpose of the searches conducted on October 3, 2016.

99.     Prison investigators searched the cells of all inmates who worked near where the tool went missing, and interviewed them.

100.    Additionally scrutiny was also paid against certain prison staff and officials entering and leaving the USDB on a regular basis.

101.    CES agents conducted a clandestine search of the Plaintiff's cell.

102.    The Defendants obtained and seized three plastic spoons, a used comb, and a conventional non-scientific calculator from the Plaintiff's cell.

103.    The items fell under the categories of items requested in the physical search application under Title III of FISA, namely DNA and electronic devices.

104.    The Plaintiff was not informed or notified of the items being taken.

105.    Normally, the USDB would notify prisoners of items being seized from their cell.

106.    The second distinct round of physical searches has occurred at varying times and places since October 3, 2016.

107.    Specifically, these physical searches have targeted personal electronic devices used by the Plaintiff's associates.

108.    The physical searches of the Plaintiff's associates are being conducted using CNE—or "hacking"—techniques conducted by Defendants NSA and DoD on behalf of Defendants FBI and DoJ.

109.    Specifically, one physical search by electronic intrusion occurred during a telephonic conversation between the Plaintiff and one of her associates at approximately 9:45 to 10:00 P.M. on November 3, 2016.

110.    During the telephone call by the Plaintiff and her associate, the associate's personal handheld device ("smart phone") was penetrated into by the Defendants.

111.    The phone call was interrupted and terminated in very unusual circumstances.

112.    The Plaintiff was unable to call her associate back after the electronic intrusion by the Defendants.

113.    The Plaintiff and her associate panicked after the electronic intrusion.

114.    The Plaintiff and her associates now carefully parse their words, and remain vigilant of unusual activities during their conversations out of fear that further electronic intrusions may occur without warning.

*The U.S. Disciplinary Barracks Investigative Techniques*

115.   The Defendants, at the USDB, have many investigative techniques at their disposal to watch over and investigate the Plaintiff.

116.   The investigative tools available to the Defendants at the USDB include recorded prison phone calls, frisk and pat-down searches, strip searches, hundreds of closed circuit television cameras, hundreds of uniformed military and civilian staff, and the use of confidential informants.

*"False Flag"—The FBI's Undercover Operation involving the Plaintiff*

117.   After conducting electronic surveillance for a period of time, CES agents planned a sophisticated undercover operation that targeted the Plaintiff while she was held in prison.

118.   Through the FBI's CES, the Defendants knowingly and willingly planned and executed this "false flag" operation, using very specialized resources and techniques.

119.   The CES agents consulted with psychologists and behavioral scientists at the FBI's Behavioral Analysis Unit ("BAU") to prepare a report that examines the history and personality traits of the Plaintiff in order to provide suggestions for the CES agents when planning a "false flag operation."

120.   In early October, 2016, the Defendants, particularly the DoJ and FBI, coordinated to have undercover agents conduct what CES agents and analysts call a "false flag operation."

121.   A "false flag operation" is an undercover operation where Defendants use federal agents to assume the identity of a foreign intelligence service or international terrorist organization with the goal of determining whether a targeted in individual is willing to cooperate with the foreign intelligence service or terrorist organization.

122.    At approximately 3:40 P.M. on October 4, 2016, the Plaintiff was in-processed into a high security wing of the USDB for an unrelated scheduled disciplinary segregation period.

123.    Shortly thereafter, the Plaintiff attempted suicide, and was moved to an adjacent cell in the high security wing of the prison.

124.    In the two days before October 10, 2016, several inmates in the high security wing of the USDB were reshuffled between different cells in different locations suddenly and without an explanation.

125.    At approximately 10:00 P.M. on October 10, 2016, at least two undercover FBI agents and an unknown number of other agents of the Defendants assumed the identities of a terrorist organization and, with selected prison staff volunteers, staged an elaborate mock attack on the USDB staff in the presence of the Plaintiff.

126.    The FBI agents, consisting of at least one white female agent, and one black male agent, assumed the role of prison guards.

127.    The FBI agents created a very loud commotion and visible chaos in the housing unit outside the Plaintiff's observation cell.

128.    The FBI agents attempted to create the ideal circumstances for the Plaintiff to attempt to escape from the prison, possess weapons and explosives, and cooperate with an unspecified international terrorist organization.

129.    The undercover agents appeared to kill and injure prison staff and inmates.

130.    The undercover agents whispered loudly, discussing plans to use explosives to destroy federal prison buildings, and plans to either help the Plaintiff escape, or kidnap the Plaintiff against her will.

131.    The FBI agents deliberately and maliciously taunted inmates and staff that were pretending to be injured.

132.    The FBI agents deliberately and maliciously traumatized the Plaintiff, causing intense fear, anxiety and physical illness in an all-night ordeal.

133.    The Plaintiff became violently ill, vomiting in the toilet several times.

134.    Despite the enticements, the Plaintiff refused to cooperate the with the undercover FBI agents—who the Plaintiff believed were likely associated with a nefarious group—and created plans to attempt to stop the undercover agents from further harming anyone.

135.    Additionally, despite the terror inflicted on the Plaintiff, she behaved peacefully, and stayed relatively calm, even with immediate and plausible threats of force by the FBI agents using firearms and explosives.

136.    Several of these prison staff witnessed the planning execution of the "false flag operation," including U.S. Army First Lieutenant Horvath, Specialist Calico, Specialist Taylor, and Specialist Cobble.

137.    At least three inmates either witnessed or participated in the "false flag operation" including Mr. Chesare Jackson, Mr. Jeremy Morlock, and a Mr. Ramos.

138.    The undercover agents asked that the prison staff, who witnessed and assisted the agents, sign prohibitive non-disclosure agreements with the DoJ and FBI, with regard to their activities during the "false flag operation."

139.    The Plaintiff has subsequently sought and received assistance from psychological professions for post-traumatic stress and anxiety in the weeks following the "false flag operation."

140.    The Defendants actions have injured the Plaintiff's physical and mental state.

141.     The Defendant's actions and participation in the "false flag" operation violated the Plaintiff's right to be free from cruel and unusual punishment under the Eighth Amendment of the U.S. Constitution.

*Petition for Redress of Grievances*

142.     The provisions of Titles I and III of FISA, 50 U.S.C. § 1801 *et seq.*, 1821 *et seq.*, have prevented the Plaintiff from petitioning the Defendants for a redress of grievances for their actions.

143.     The Defendants have prevented the Plaintiff from petitioning them for a redress of grievances for their actions.

144.     The provisions of Titles I and III of FISA, 50 U.S.C. § 1801 *et seq.*, 1821 *et seq.*, and the Defendants have prevented the Plaintiff from seeking any form of meaningful redress from the Defendants.

145.     The Plaintiff has had her right to petition the government for redress denied by both the Defendants and provisions of Titles I and III of FISA, 50 U.S.C. § 1801 *et seq.*, 1821 *et seq.*, in violation of the First Amendment of the U.S. Constitution.

*Exhaustion of Administrative Remedies*

146.     The Plaintiff has exhausted all available administrative remedies with respect to all of her claims against the Defendants.

## CLAIMS FOR RELIEF

**CLAIM I: Violation of the First Amendment to the U.S. Constitution (Asserted by Plaintiff against all Defendants)**

147.     Plaintiff incorporates, by reference, all of the allegations of the preceding paragraphs.

148.    The Plaintiff and her associates are not foreign powers under § 101 (b) of FISA, 50 U.S.C. § 1801 (b).

149.    The Plaintiff and her associates are not agents of a foreign power under § 101 (b)(2) of FISA, 50 U.S.C. § 1801 (b)(2).

150.    The Defendants have targeted the Plaintiff and any person who associates with Plaintiff with electronic surveillance and physical searches regardless of whether they are foreign powers, or agents of foreign powers.

151.    The Defendants' targeting of Plaintiff and her associates with electronic surveillance and physical searches constitute a violation of freedom of speech and of association under the First Amendment of the U.S. Constitution.

152.    The provisions of Titles I and III of FISA, 50 U.S.C. § 1801 *et seq.*, 1821 *et seq.*, have prevented the Plaintiff from seeking any form of meaningful redress from the Defendants.

153.    The Defendants acts and omissions have prevented the Plaintiff from petitioning the government for a redress of grievances.

154.    The Defendants are violating the Plaintiff's right to petition for a redress of grievances.

155.    The Plaintiff has been irreparably harmed by the Defendants' acts and omissions.

156.    Plaintiff will continue to be irreparably harmed by the Defendants' acts and omissions.

**CLAIM I:   Violation of the Fourth Amendment to the U.S. Constitution (Asserted by Plaintiff against all Defendants)**

157.    Plaintiff incorporates, by reference, all of the allegations of the preceding paragraphs.

158.    The Plaintiff and her associates are not foreign powers under § 101 (b) of FISA, 50 U.S.C. § 1801 (b).

159.    The Plaintiff and her associates are not agents of a foreign power under § 101 (b)(2) of FISA, 50 U.S.C. § 1801 (b)(2).

160.    The Defendants have targeted Plaintiff with electronic surveillance and physical searches, regardless of whether she is a foreign power or an agent of a foreign power.

161.    The Defendants have no valid bases to argue a reasonable probable cause for any electronic surveillance or physical searches under Titles I or III of FISA, 50 U.S.C. §§ 1801 *et seq.*, 1821 *et seq.*

162.    Defendant's targeting of the Plaintiff with electronic surveillance and physical searches constitute a violation of her right against unreasonable searches and seizures under the Fourth Amendment of the U.S. Constitution.

163.    Plaintiff has been irreparably harmed by the Defendants' acts and omissions.

164.    Plaintiff will continue to be irreparably harmed by the Defendants' acts and omissions.

**CLAIM III:  Violation of the Fifth Amendment to the U.S. Constitution (Asserted by Plaintiff against all Defendants)**

165.    Plaintiff incorporates, by reference, all of the allegations of the preceding paragraphs.

166.    Defendants have failed to provide any notice to the Plaintiff of any applications or orders for electronic surveillance or physical searches under Titles I or III of FISA, 50 U.S.C. §§ 1801 *et seq.*, 1821 *et seq.*

167.    Defendants have failed to provide any notice to the Plaintiff of any information obtained, or any physical items seized during any electronic surveillance or physical searches.

168.    The Defendants' acts and omissions with regard to not providing any notice to the Plaintiff with respect to electronic surveillance or physical searches have violated the Plaintiff's right to due process of law under the Fifth Amendment of the U.S. Constitution.

169.    Plaintiff has been irreparably harmed by the Defendants' acts and omissions.

170.    Plaintiff will continue to be irreparably harmed by the Defendants' acts and omissions.

**CLAIM IV: Violation of the Eighth Amendment to the U.S. Constitution (Asserted by Plaintiff against Defendants Attorney General Jefferson Sessions III, the Department of Justice, Director James Comey, and the Federal Bureau of Investigation)**

171.    Plaintiff incorporates, by reference, all of the allegations of the preceding paragraphs.

172.    Defendants DoJ and FBI conducted a "false flag" operation involving the Plaintiff on October 10-11, 2016.

173.    The Defendants engaged in malicious and sadistic actions during the "false flag" operation involving the Plaintiff.

174.    The Plaintiff suffered severe physical illness during the Defendants' "false flag" operation.

175.    The Plaintiff suffered severe psychological and emotional injury during the Defendants' conduct of the "false flag" operation.

176.    The Defendants have violated the Plaintiff's right to be free from cruel and unusual punishments inflicted by the Defendants' "false flag" operation.

177.   Plaintiff has been irreparably harmed by the Defendants' acts and omissions during the "false flag" operation.

178.   Plaintiff will continue to be irreparably harmed by the Defendants' acts and omissions in future counterintelligence operations.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court grant the following relief

A.     Declare that the Defendants' actions in targeting the Plaintiff, or any other person associating with the Plaintiff, with electronic surveillance or physical searches constitute a violation of the Plaintiff's right to freedom of speech, freedom of association, and to petition the government for a redress of grievances guaranteed under the U.S. Constitution.

B.     Declare that the Defendants' actions in targeting the Plaintiff with electronic surveillance and physical searches without any reasonable probable cause constitute a violation against the protection of the Plaintiff from unreasonable searches and seizures guaranteed by the Fourth Amendment of the U.S. Constitution.

C.     Declare that the Defendants have failed to provide any notice to the Plaintiff of any information obtained or any physical items seized during any electronic surveillance physical searches, or with any other information with respect to such electronic surveillance or physical searches, involving the Plaintiff have violated the Plaintiff's right to due process of law guaranteed under the Fifth Amendment of the U.S. Constitution.

D.     Declare that the Defendants' have engaged in malicious and sadistic actions against the Plaintiff while conducting a "false flag" counterintelligence operation targeting the Plaintiff on October 10-11, 2016 violated the Plaintiff's right to be free from cruel and unusual punishments, guaranteed under the Eighth Amendment of the U.S. Constitution.

E.     Enter an injunction barring the Defendants and their agents from conducting electronic surveillance under any applications or orders under Title I of FISA, 50 U.S.C. § 1801 *et seq.*, that involve the Plaintiff.

F.     Enter an injunction barring the Defendants and their agents from conducting physical searches under any applications or orders under Title III of FISA, 50 U.S.C. § 1821 *et seq.*, that involve the Plaintiff.

G.     Enter an injunction barring the Defendants and their agents from seeking any future orders under Title I of FISA, 50 U.S.C. § 1801 *et seq.*, 1821 *et seq.*, without reasonable and justifiable probable cause.

H.     Award the Plaintiff compensatory damages against Defendants Attorney General Sessions, Department of Justice, Director Comey, and the Federal Bureau of Investigation for the physical and emotional injuries sustained as a result of the "false flag operation" involving the Plaintiff.

I.     Award the Plaintiff all reasonable attorney's fees; and

J.     Award all other relief that the Court deems just and proper.

Respectfully submitted,

April 17, 2017

CHELSEA E. MANNING
Plaintiff, *pro se*
1300 North Warehouse Road
Fort Leavenworth, KS 66027-2304