# THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHELSEA E. MANNING, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )  Civil Action No.  1:16-cv-02307 |
| | ) |
| DANIEL R. COATS, | ) |
| Director of National Intelligence, *et al.*, | ) |
| | ) |
| Defendants.[1] | ) |
| _____ | ) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND IN OPPOSITION TO MOTION FOR A PRELIMINARY INJUNCTION

Plaintiff, Chelsea Manning, seeks injunctive relief and money damages for alleged constitutional violations stemming from alleged government surveillance of her while she was incarcerated at the United States Disciplinary Barracks.  She has also moved for a preliminary injunction.  The allegations in support of her claims are wholly implausible and incredible, and the matter could be dismissed on that basis alone.  Aside from the fantastical nature of its factual allegations, however, the Amended Complaint also suffers from numerous threshold legal defects, all of which constitute independent grounds for dismissal.  Specifically, plaintiff never administratively exhausted her claims when she was in prison; she has not established standing to pursue claims based on alleged government surveillance or for any prospective relief; her claims for equitable relief are now moot following her recent release from prison; her claim for money damages is barred by sovereign immunity; and her various constitutional theories fail to

---

[1] The current public officers have been substituted for the individual defendants sued in their official capacities pursuant to Federal Rule of Civil Procedure 25(d).

state a claim upon which relief can be granted.  Accordingly, the motion for a preliminary

injunction should be denied and the case dismissed.

## I.      FACTUAL BACKGROUND.

Plaintiff Chelsea Manning is a transgender woman who, until recently, was incarcerated

at the United States Disciplinary Barracks (USDB), which is a maximum-security military prison

for men, located in Fort Leavenworth, Kansas.  As has been widely reported, former President

Obama commuted plaintiff's sentence, and she was released on May 17, 2017.[2]

Prior to her release, plaintiff filed the above captioned lawsuit against numerous

government defendants in which she seeks injunctive and declaratory relief as well as money

damages for alleged Constitutional violations stemming from "clandestine and intrusive

electronic surveillance and physical searches, including computer network exploitation [and a]

simulated [] terrorist attack, kidnapping, and hostage situation".  Amended Complaint for

Injunctive and Declaratory Relief and Damages ("Am. Compl."), Dkt. No. 9-1, ¶ 1.   She alleges

that the surveillance and physical searches were conducted pursuant to the Foreign Intelligence

Surveillance Act (FISA).  Shortly after filing her complaint, plaintiff moved for a preliminary

injunction, which she supported with a personal affidavit setting forth additional allegations

regarding her allegations.  *See* Dkt. No. 4.  Her allegations relating to the alleged surveillance

and searches identify the following incidents:

First, plaintiff alleges that DOJ and FBI employees applied for orders permitting

electronic surveillance and physical searches of plaintiff under the FISA beginning sometime

---

[2] *See* Declaration of Thomas J. Schmitt ("Schmitt Decl.") ¶ 5.

before early October 2016.  *See* Am. Compl. ¶ 74-78.  She further alleges that "[a]t least some of the electronic and physical searches under FISA have now been executed in whole or in part".  *See id*. ¶ 79.  She states that she has not received any notice of these orders.  *See id*. ¶ 80.  She alleges that the DOJ and FBI are conducting "sweeping and broad electronic surveillance" on her, as well as on her associates.  *See id*. ¶ 82.

Plaintiff also alleges that she was subject to multiple physical searches allegedly authorized under the FISA.  Specifically, she alleges that DOD and FBI officials began conducting multiple clandestine physical searches beginning on October 3, 2016.  *See* Am. Compl. ¶ 91.  According to plaintiff, some of these searches were conducted under a cover story based on the loss of a tool near her work area in a prison work detail.  *See id*. ¶ 96.  She further alleges that during one search, defendants took from her items including three plastic spoons, a used comb, and a conventional non-scientific calculator.  *See id*. ¶ 102.  Plaintiff also alleges that she and her associates have been subject to physical searches of her associates' personal electronic devices.  *See id*. ¶ 107.  Specifically, she alleges that on November 3, 2016, she and an associate were subject a "physical search" while speaking on the telephone because the call was subject to an "electronic intrusion" by government agents.  *See id*. ¶¶ 109-114.

Plaintiff also alleges that a "false flag" incident occurred overnight on October 10, 2016, in which, while at the USDB, she was subject to a simulated terrorist attack and prison breakout staged by government officials.  *See* Am. Compl. ¶¶ 117-140.  She further alleges that FBI agents involved in this event "assumed the identities of a terrorist organization and, with selected prison staff volunteers, staged an elaborate mock attack on the USDB staff."  *See id*. ¶ 125.  Further, according to plaintiff, "[t]he undercover agents appeared to kill and injure prison staff and inmates."  *Id*. ¶ 129.  They also allegedly "whispered loudly, discussing plans to use

explosives to destroy federal prison buildings, and plans to either help the Plaintiff escape, or kidnap the Plaintiff against her will." *Id.* ¶ 130.   Plaintiff alleges that these agents "deliberately and maliciously traumatized [her], causing intense, fear, anxiety and physical illness in an all-night ordeal." *Id.* ¶ 132.

Plaintiff brings claims under the First, Fourth, Fifth, and Eighth Amendments of the U.S. Constitution based on these alleged events.   The Eighth Amendment claim is based solely on the alleged "false flag" event.  *See* Am. Compl. ¶¶ 172-177.   After plaintiff completed service of the complaint, the Government moved to consolidate its response to the complaint along with its opposition to plaintiff's motion for a preliminary injunction.  *See* Dkt. No. 6.   The Court granted that request on March 29, 2017.  *See* Minute Order, Mar. 29, 2017.   Thereafter plaintiff moved to amend her complaint, which the Government did not oppose, and which the Court granted. *See* Dkt. Nos. 9, 10; Minute Order, May 10, 2017.   The Government now submits this combined filing, and requests that the Court dismiss this action on various grounds, including because plaintiff did not administratively exhaust her claims when in prison, for lack of subject matter jurisdiction, and for failure to state a claim upon which relief can be granted.   The Court should also deny plaintiff's motion for a preliminary injunction because plaintiff has not shown a likelihood of success on the merits, nor has she satisfied the other factors needed to obtain preliminary injunctive relief. [3]

---

[3] Plaintiff has also moved for a protective order with respect to purportedly classified information at issue, *see* Dkt. No. 2, and for the appointment of counsel, *see* Dkt. No. 3. Consideration of the requested protective order would be premature because resolution of the Government's motion to dismiss does not require review of any classified information.  (In the unlikely event this case proceeds, the Government would separately address why such an order would be inappropriate.)  The Government takes no position on plaintiff's request for

## II.      LEGAL STANDARDS.

### A.  Motion to Dismiss Under Rule 12(b)(1).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff must establish the court's jurisdiction over the subject matter.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, (1992); *Bolden-Bey v. U.S. Parole Comm'n*, 731 F. Supp. 2d 11, 13 (D.D.C. 2010).  When considering a motion under Rule 12(b)(1), the court must accept as true all uncontroverted material factual allegations contained in the complaint and "construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged and upon such facts determine jurisdictional questions."  *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal citations and quotation marks omitted). The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions.  *See Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In evaluating subject-matter jurisdiction, the court, when necessary, may look beyond the complaint to "undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *Herbert v. Nat'l Acad. of Scis.,* 974 F.2d 192, 197 (D.C. Cir. 1992); *see also Simon v. Republic of Hung.*, 37 F. Supp. 3d 381, 395-96 (D.D.C. 2014).

### B.  Motion to Dismiss Under Rule 12(b)(6).

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds

---

appointment of counsel.

upon which it rests.  Fed. R. Civ. P. 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

(*per curiam*).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate

likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim.

*See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  "To survive a motion to dismiss, a complaint

must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported

by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss.

*Iqbal*, 556 U.S. at 678.  In addition, a court need not accept a plaintiff's legal conclusions as true,

*see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual

allegations.  *See Twombly*, 550 U.S. at 555.   In deciding whether to dismiss a claim under Rule

12(b)(6), a court may consider the facts alleged in the complaint, documents attached as exhibits

or incorporated by reference in the complaint, and matters about which a court may take judicial

notice.  *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002) (citations omitted).

## III.   ARGUMENT IN SUPPORT OF MOTION TO DISMISS.

The Amended Complaint must be dismissed for numerous reasons, not least of which is

the sheer implausibility of its allegations.  Indeed, plaintiff's allegations are "wholly insubstantial

or frivolous", and require dismissal out of hand.  *See Richards v. Duke Univ*., 480 F. Supp. 2d

222, 232 (D.D.C. 2007) (quoting *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 89

(1998)).  Other straightforward bases for dismissal are familiar threshold barriers, which the

Government has set forth below: failure to exhaust administrative remedies; jurisdictional

defects, including mootness following plaintiff's release from prison, lack of standing to

challenge injuries related to alleged surveillance or to obtain prospective injunctive relief, and

the sovereign immunity bar against her claim for money damages; and a failure to state claims under the various constitutional theories.

### A. Plaintiff's Claims Must Be Dismissed Because She Did Not Exhaust Them While In Prison.

Plaintiff's claims must be dismissed because they have not been exhausted.  She has filed no grievances with the USDB related to any of the events alleged in the complaint, and accordingly the Prison Litigation Reform Act ("PLRA"), requires dismissal of her claims.[4]

The PLRA provides that "[n]o action shall be brought with respect to prison conditions. . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  *See also Marrie v. Nickels*, 70 F. Supp. 2d 1252, 1265 (D. Kan. 1999) (applying exhaustion requirement of PLRA to military prisoners at the USDB).  This exhaustion requirement is mandatory and "applies to all prisoners seeking redress for prison circumstances or occurrences."  *Porter v. Nussle*, 534 U.S. 516, 520 (2002); *see Jones v. Bock*, 127 S. Ct. at 918-19.  Exhaustion under the PLRA requires proper exhaustion, meaning that a prisoner must comply with procedural rules, including filing deadlines, as a precondition to filing a civil suit in federal court, regardless of the relief offered through the administrative process.  *Woodford v. Ngo*, 548 U.S. 81, 95 (2006); *Booth v. Churner*, 532 U.S. 731, 741 (2001).  Thus, a prisoner may file a civil action concerning conditions of confinement under federal law only after she has exhausted the prison's administrative remedies.

---

[4] Exhaustion under the PLRA is not a jurisdictional requirement, but is an affirmative defense, which the defendants have the burden of pleading and proving.  *See Johnson v. D.C.*, 869 F. Supp. 2d 34, 36-37 (D.D.C. 2012) (citations omitted).

*Jackson v. District of Columbia*, 254 F.3d 262, 269 (D.C. Cir. 2001).  The purpose of exhaustion is to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Porter*, 534 U.S. at 525.  The facility may take corrective action "thereby obviating the need for litigation," or at the very least the facility's response will create "an administrative record that clarifies the contours of the controversy."  *Id.*  A prisoner is subject to the exhaustion requirement even after her release from custody when her complaint was filed while in custody.  *Hawthorne v. Gray*, 893 F. Supp. 2d 11, 14, (D.D.C. 2012) (citing *Ahmed v. Dragovich*, 297 F.3d 201, 210 (3d Cir. 2002), *Hunter v. Corr. Corp. of Am.*, 441 F. Supp. 2d 78, 82 (D.D.C. 2006)).

The allegations in the complaint clearly relate to "prison conditions" such that exhaustion is required.  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532.  Plaintiff's allegations that she has been searched, including through an alleged violent encounter, and surveilled while in prison, relate directly to her life in the USDB, and are therefore subject to the PLRA.  As the Sixth Circuit has explained, complaints regarding "[p]rison intrusions on a prisoner's privacy, legitimate or not, are obviously prison conditions" and therefore must be exhausted.  *See Krilich v. Fed. Bureau of Prisons*, 346 F.3d 157, 159 (6th Cir. 2003).  So too must complaints regarding alleged cruel and unusual punishment while incarcerated.  *See Banks v. York*, 515 F. Supp. 2d 89, 116 (D.D.C. 2007).

At the USDB, inmates submit complaints and requests using a Military Correctional Complex (MCC) Form 510.  *See* Schmitt Decl. ¶ 3, & Ex. A, attached thereto ("Inmates communicate with staff by using an MCC Form 510, Inmate Request Slip. The MCC Form 510

is the only written format authorized for inmate communication with staff."), & Ex. B, attached

thereto.  Plaintiff has filed no MCC Form 510s regarding the allegations of the Amended

Complaint.  *See* Schmitt Decl. ¶ 4.[5]  Accordingly, the Amended Complaint should be dismissed

in its entirety for failure to exhaust administrative remedies.

### B.   The Court Lacks Jurisdiction Because Plaintiff's Allegations Are "Patently Insubstantial".

"[T]he federal courts are without power to entertain claims otherwise within their

jurisdiction if they are 'so attenuated and unsubstantial as to be absolutely devoid of merit.'"

*Hagans v. Lavine*, 415 U.S. 528, 536-37 (1974) (quotation omitted).  A complaint may be

dismissed on jurisdictional grounds when it "is 'patently insubstantial,' presenting no federal

question suitable for decision." *Tooley v. Napolitano*, 586 F.3d 1006, 1009 (D.C. Cir. 2009)

(*quoting Best v. Kelly*, 39 F.3d 328, 330 (D.C. Cir. 1994)).  To be dismissed under Rule 12(b)(1)

on this ground the claims must "be flimsier than 'doubtful or questionable' -- they must be

'essentially fictitious.'" *Best*, 39 F. 3d at 330 (quoting *Hagans v. Lavine*, 415 U.S. at 536-37).

Claims that are essentially fictitious include those that allege "bizarre conspiracy theories, any

fantastic government manipulations of their will or mind [or] any sort of supernatural

intervention." *Best*, 39 F. 3d at 330. *Cf. Ashcroft v. Iqbal*, 129 S. Ct. at 1959 (Souter, J.,

dissenting) (noting, in discussing the well-pleaded complaint rule under Rule 12(b)(6): "The sole

exception to this rule lies with allegations that are sufficiently fantastic to defy reality as we

know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in

---

[5] Plaintiff appears to concede that exhaustion is required in the complaint when she alleges that she has "exhausted all available administrative remedies." Am. Compl. ¶ 146.  She does not provide any factual allegations to support this legal conclusion, however, and the Court therefore need not accept it as true.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

time travel."). When a plaintiff's allegations are "so attenuated and insubstantial as to be

absolutely devoid of merit [the claims] should be dismissed" for lack of subject matter

jurisdiction.  *Richards*, 480 F. Supp. 2d at 232; *see also Curran v. Holder*, 626 F. Supp. 2d 30,

33 (D.D.C. 2009).

 Plaintiff's allegations regarding the broad surveillance to which she has allegedly been

subjected, and in particular the alleged "false flag" operation, are the type of "bizarre conspiracy

theory" that warrant dismissal under Rule 12(b)(1).  *See Curran*, 626 F. Supp. 2d at 33

(quotations omitted).  She alleges that on the night in question, after elaborate preparation, "at

least two undercover FBI agents and an unknown number of other agents of the Defendants

assumed the identities of a terrorist organization and, with selected prison staff volunteers, staged

an elaborate mock attack on the USDB in the presence of the Plaintiff."  Am. Compl. ¶ 125.

Moreover, the FBI agents in question, allegedly "attempted to create the ideal circumstances for

the Plaintiff to attempt to escape from the prison, possess weapons and explosives, and cooperate

with an unspecified international terrorist organization."  *Id.* ¶ 128.  They also "appeared to kill

and injure prison staff and inmates."  Id. ¶ 129.  Courts in this circuit have dismissed fanciful

allegations of this sort, and the Court should do the same here.  *See Tooley*, 586 F.3d at 1009-10

(upholding dismissal of claims where plaintiff alleged that after he spoke with an airline

reservations agent about travel and airline security, the government: (1) placed wiretaps on

plaintiff's telephone, his family members' telephones, and the telephone at a past residence; (2)

placed monitoring devices on his and his wife's cars; and (3) subjected him to "detention and

strict searches" every time he traveled); *Roum v. Fenty*, 697 F. Supp. 2d 39, 42 (D.D.C. 2010)

("the gravamen of [plaintiff's] claims is that defendants have participated in a vast and ongoing

conspiracy against him involving numerous federal and local agencies and officers"); *Curran*,

626 F. Supp. 2d at 33-34 (plaintiff claimed to be subjected to a government campaign of surveillance and harassment, the origins of which were unclear); *Lewis v. Bayh*, 577 F. Supp. 2d 47, 54-55 (D.D.C. 2008) (plaintiff claimed that a U.S. Senator orchestrated a program of hacking into plaintiff's personal computer, monitoring his phone calls, causing a power outage affecting half of Los Angeles, and tracking plaintiff by helicopter).

### C.  Plaintiff Fails to Establish Her Standing To Challenge Alleged FISA Surveillance.

Relatedly, plaintiff has failed to plausibly allege that she has been subject to alleged unlawful surveillance and therefore has failed to establish her standing to bring this action. Plaintiff's constitutional claims are premised on the unfounded allegation that she has been subjected to surveillance pursuant to the FISA.[6] As the Supreme Court's decision in *Amnesty International v. Clapper*, 133 S. Ct. 1148 (2013), makes clear, mere speculation that a person has been subject to surveillance is insufficient to establish standing.  In *Amnesty International*, the plaintiff organizations "fail[ed] to offer any evidence that their communications ha[d] been monitored" under the challenged FISA provision, and instead claimed it was likely that communications of theirs would be acquired because they regularly engaged in communications with persons who were likely targets of government surveillance.  *See id*. at 1145-56, 1158.  The Supreme Court held that these assertions were insufficient to confer standing, because it was speculative whether the government would imminently target communications to which the plaintiffs were parties.  *Id*. at 1148.  Here, plaintiff's allegations that she has been subject to

---

[6] Aside from the other deficiencies in her Amended Complaint, there is no basis to conclude that even if plaintiff was subject to FISA-related surveillance that such surveillance was not lawfully authorized.

government surveillance are even more highly speculative and implausible, and dismissal is thus required.

Plaintiff alleges that she has been subject to broad electronic surveillance pursuant to applications that the Government purportedly submitted to the Foreign Intelligence Surveillance Court. *See* Am. Compl. ¶¶ 71-78. But nowhere does plaintiff identify what basis she has to believe that these applications exist, or any non-conclusory factual allegations that would make their existence remotely plausible, or that the alleged surveillance has even occurred. On the contrary, these are the types of highly speculative and conclusory allegations, unmoored from any plausible factual showing, that fail to establish standing. *See Amnesty International*, 133 S. Ct. at 1145-48

Plaintiff identifies three specific incidents in which she was supposedly subject to surveillance: (1) physical searches of plaintiff, her living areas, and her working areas, which resulted in seizure of a few of plaintiff's personal items, occurring in October 2016; (2) alleged surveillance of a telephone call between plaintiff and an associate on November 3, 2016; and (3) a "simulated terrorist attack" staged by undercover agents overnight on October 10, 2016. With regard to the first alleged incident, neither plaintiff's allegations nor the facts alleged in her complaint make it plausible that the physical searches that allegedly occurred of her person, cell, and living areas in October 2016 were anything other than routine prison searches. She acknowledges that the USDB conducted at least some of these searches for the stated reason that a tool had gone missing from a prison work detail. *See* Am. Compl. ¶¶ 95-96. Although she labels this rationale a "cover story", she provides no factual allegations that would support her theory. *See id*. There is no plausible basis on which to conclude that if the USDB conducted these searches, it did so for any reason other than the stated purpose, and as part of the "close and

continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Hudson v. Palmer*, 468 U.S. 517, 527-528 (1984) (quotation omitted).  Nor do the allegations that the USDB seized personal items of plaintiff's implicate the FISA in any way. Given that prison officials routinely and permissibly surveil prisoners and inspect their personal items, there would be no reason to utilize the stringent requirements of the FISA to do so.  *Cf. id.* (describing permissible surveillance in prison).

Similarly, plaintiff's allegation that a phone call with an associate of hers "was interrupted and terminated in very unusual circumstances" does not bring her claims that she is subject to FISA surveillance beyond the speculative level.  Am. Compl. ¶ 111.  Aside from the unusual termination of the phone call, which could occur for a host of benign reasons, the Amended Complaint does not provide any specific factual detail to support the conclusion that the phone call was surveilled.

Finally, plaintiff's allegations that she was subject to a simulated terrorist attack and prison breakout at the USDB run by FBI agents and others are simply not credible.  Even if this extraordinary incident had occurred, none of the factual assertions suggest that it related in any way to surveillance under the FISA (or is even considered surveillance in the general meaning of the word).  Nothing other than Plaintiff's unbounded speculation ties this incident to alleged surveillance under the FISA, and therefore cannot establish standing for her surveillance-related theories.  *See Amnesty International*, 133 S. Ct. at 1148-50.

Plaintiff's claims suffer from another fatal defect in standing --- there is no plausible reason to believe that she will be subject to future injury that would warrant prospective injunctive relief.  Allegations of speculative, future injuries are insufficient to establish standing to obtain prospective relief.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  Plaintiffs

who seek prospective relief must show that a threatened injury is "*certainly* impending"; it is insufficient for them to demonstrate only a past injury. *Amnesty Int'l*, 133 S. Ct. at 1147 (emphasis in original); *see also Lyons*, 461 U.S. at 103 ("[P]ast wrongs do not in themselves amount to that real and immediate threat of injury necessary to make out a case or controversy."). Here the Amended Complaint lacks any factual allegations suggesting that she is subject to any ongoing FISA surveillance or that she will be subject to such surveillance in the future. The Amended Complaint merely alleges that the alleged surveillance is "currently being conducted by technicians and experts … in support of the … counterintelligence investigation." Am. Compl. ¶ 89. Not only does this statement omit any factual allegations to make it plausible, it does not even specifically allege that surveillance will continue into the future. The Amended Complaint fails to establish the type of "certainly impending" injury necessary to obtain prospective relief.

### D.  Plaintiff's Claims for Equitable Relief are Moot Following Her Release from Prison.

Plaintiff's claims can be dismissed on mootness grounds as well. As has been widely reported, plaintiff was released from the USDB on May 17, 2016. *See* Schmitt Decl. ¶ 5. Her requests for injunctive relief relating to the surveillance and searches that she allegedly experienced while in prison are therefore moot. "Normally, a prisoner's transfer or release from a prison moots any claim he might have for equitable relief arising out of the conditions of his confinement in that prison." *Pinson v. Department of Justice*, 177 F. Supp. 3d 474, 478 (D.D.C. 2016) (quoting *Scott v. District of Columbia*, 139 F.3d 940, 941, (D.C. Cir. 1998)); *see also*, *e.g.*, *Ford v. Bender*, 768 F.3d 15, 29 (1st Cir. 2014) ("A prisoner's challenge to prison conditions or

policies is generally rendered moot by his transfer or release."); *Lehn v. Holmes*, 364 F.3d 862, 871 (7th Cir. 2004) (same).

Moreover, plaintiff has not alleged any basis on which to conclude that the alleged surveillance-related injuries that she allegedly suffered while in prison would continue now that she has resumed private life.  *See Munn Bey v. Dep't of Corr.*, 839 F. Supp. 2d 1, 6 (D.D.C. 2011) (alleged past exposure to illegal conduct in prison does not show a pending case or controversy regarding injunctive relief) (quoting *Young v. Lane*, 922 F.2d 370, 373 (7th Cir.1991)).  Plaintiff's request for injunctive relief is therefore moot, and claims seeking this relief should be dismissed and the motion for a preliminary injunction should be denied.

### E.  Plaintiff's Claim for Money Damages Must Be Dismissed.

The Amended Complaint adds a claim for money damages under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).  Plaintiff's *Bivens* theory is defective, however, because the Amended Complaint does not name any defendants in their individual capacities.  Plaintiff's claim for money damages must therefore be dismissed.

In *Bivens* the Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights."  *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  "It is well established that Bivens remedies do not exist against officials sued in their official capacities."  *Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011).  Claims brought against federal officials in their official capacities "are treated as if they were brought against the federal government itself."  *Morton v. Bolyard*, 810 F. Supp. 2d 112, 115 (D.D.C. 2011) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)).  However, "'[i]t is axiomatic that the United States may not be sued without its consent[,] that the existence of consent is a prerequisite for jurisdiction,'" *Morton*, 810 F. Supp. 2d at 115 (quoting

*United States v. Mitchell*, 463 U.S. 206, 212 (1983)), and that, "'[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit.'" *Id.* at 116 (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)). Since the federal government "has not expressly waived its sovereign immunity for suits brought under *Bivens*[,]" sovereign immunity bars plaintiff's claims against both the individually-named defendants in their official capacities and the defendant agencies. *Cornish v. United States*, 885 F. Supp. 2d 198, 205 (D.D.C. 2012) (citations omitted); *see also Clark v. Library of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984). Plaintiff specifically alleges that the individual defendants are sued in their official capacities. *See* Am. Compl. ¶¶ 10, 11, 13, 15, 17. Her *Bivens* claim must therefore be dismissed for lack of subject matter jurisdiction. *See Cornish*, 885 F. Supp. 2d at 205.[7]

---

[7] The undersigned counsel represents the defendants solely in their official capacities, in which they have been expressly named in this case. It is worth observing, however, that even if plaintiff's claims could be construed as running against defendants in their *individual* capacities, dismissal would still be required because plaintiff does set forth any allegations that Attorney General Sessions or former FBI Director Comey were personally involved in the alleged "false flag operation" for which plaintiff seeks compensatory damages. *See* Am. Compl. ¶ 1 and at 24. "Since a *Bivens* lawsuit is properly brought against a federal official in his or her individual or personal capacity, 'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Vazquez v. Fed. Bureau of Prisons*, 999 F. Supp. 2d 174, 176 n.1 (D.D.C. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676, (2009). Liability cannot be based on a theory of vicarious liability or *respondeat superior*. *See Burke v. Lappin*, 821 F. Supp. 2d 244, 247 (D.D.C. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. at 676) ("vicarious liability is inapplicable to *Bivens* . . . suits"). *See also Cameron*, 983 F.2d at 257-58 (dismissing plaintiff's *Bivens* action against the Attorney General where the plaintiff "provided no factual allegations whatsoever to support his claims" against him); *Zakiya v. United States*, 267 F. Supp. 2d 47, 56-57 (D.D.C. 2003) (dismissing claims against defendants who had "been named as parties solely because of their status as high ranking Department of Justice officials").

**F.   Plaintiff Does Not State A Claim As to the Various Constitutional Violations.**

Beyond the foregoing grounds for dismissal, plaintiff's allegations also do not state

plausible claims as to the alleged violations of the First, Fourth, and Fifth Amendments.

Plaintiff's First Amendment associational and speech claims relate to the alleged

surveillance of her communications with her associates, particularly an allegedly tapped phone

call on November 3, 2016.  But even if this unfounded allegation were taken as true, it would not

state a valid claim.  "While constitutional protections do not disappear at the prison gate, it is

well established that 'a prison inmate retains [only] those First Amendment rights that are not

inconsistent with his status as a prisoner or with the legitimate penological objectives of the

corrections system.'" *Aref v. Lynch*, 833 F.3d 242, 258-259 (D.C. Cir. 2016) (quoting *Pell v.

Procunier*, 417 U.S. 817, 822 (1974)).  Surveillance of a prisoner's communications with the

outside world are routinely upheld.  *See*, *e.g.*, *Scott v. Conley*, 937 F. Supp. 2d 60, 72 (D.D.C.

2013); *Semler v. Ludeman*, 2009 U.S. Dist. LEXIS 122567, *42 (D. Minn. Nov. 23, 2009)

(collecting cases).  There is no question that prison officials could properly monitor

communications between plaintiff and outsiders either through telephone calls or visits.  *See

Christman v. Skinner*, 468 F.2d 723, 726 (2d Cir. 1972) (citing *Lanza v. New York*, 370 U.S. 139

(1962)); *Rodriguez v. Blaedow*, 497 F. Supp. 558, 559-560 (E.D. Wis. 1980).  Plaintiff does not

claim  that the alleged surveillance was unrelated to legitimate penological concerns.  *See*, *e.g.*,

*id.*; *Guajardo v. Estelle*, 580 F.2d 748, 756-57 (5th Cir. 1978).  Thus, alleged surveillance of her

phone call while in prison would not state a viable First Amendment claim.

Plaintiff also fails to state a claim regarding an alleged abridgment of her right to petition

the government for redress of grievances.  The Amended Complaint does not set forth any

specific factual allegations regarding the manner in which this right was allegedly abridged, nor

any legal theory in support of this claim.  Accordingly, in addition to several other grounds for dismissal outlined above, this aspect of plaintiff's First Amendment claims could also be dismissed for failure to state any claim.

Likewise, plaintiff fails to state any valid claim that her rights under the Fourth Amendment have been violated, again assuming, *arguendo,* her allegations are taken as true at this pleading stage.  Prisoners do not have the same right to privacy possessed by unincarcerated individuals.  *See Hudson v. Palmer*, 468 U.S. 517, 527-528 (1984) ("A right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order.") (quotation omitted).  Plaintiff's allegations regarding the supposed surveillance activities—routine searches of her cell and person, observations of her while in protective custody, monitoring of phone calls—are not the type of invasion into privacy that courts find could raise a cognizable Fourth Amendment violation while in prison.  *See*, *e.g*., *Barnes v. District of Columbia*, 793 F. Supp. 2d 260, 288 (D.D.C. 2011) (videotaping strip searches of prisoners could be reasonable depending on prison's justification for doing so).

Next, plaintiff's Fifth Amendment claim appears to be premised on the failure to provide notice of the alleged FISA surveillance.  But for the same reasons that plaintiff has not put forward plausible allegations that she was even subject to any such surveillance, there is no basis on which to find she has stated a plausible claim that she was deprived of any Constitutionally-required notice.  In addition, with respect to the alleged physical searches of her cell, prisoners are not entitled to notice prior to searches of their cells.  *See Ahlers v. Rabinowitz*, 684 F.3d 53, 62 (2d Cir. 2012) (citing *Hudson*, 468 U.S. at 529).  And to the extent that plaintiff's Fifth Amendment claim is premised on the alleged seizure of her three plastic spoons, used comb, and

conventional calculator, Am. Compl. ¶ 102, no notice of seizure is required contemporaneous

with the seizure of items from a prison cell.  *See id*. ("The state's interest in quick and efficient

searches militates against requiring that a detailed explanation or a written receipt be given at the

time of seizure." (citing *Block v. Rutherford*, 468 U.S. 576, 590 (1984)).  In any event, plaintiff

does not provide sufficient factual allegations regarding the disposition of the plastic spoons,

used comb, and calculator to determine whether she was provided with any post-deprivation

remedy.  *See*, *e.g. Hudson*, 468 U.S. at 533.  It is clear that she did not take advantage of at least

one post-deprivation remedy that was available to her, filing an administrative grievance, *see*

*supra* at 7-9.  Thus, plaintiff's Fifth Amendment claim must also be dismissed for failure to state

a claim.

Finally, plaintiff's Eighth Amendment claim is premised on the alleged "false flag"

event—a simulated terrorist attack and prison breakout staged by government officials.  As

previously discussed, the factual allegations regarding this event are entirely too implausible to

credit, and the claim should be dismissed on that ground.

## IV.    ARGUMENT IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION.

While this action should be dismissed for the reasons set forth above, there are other

independent reasons to deny the motion for a preliminary injunction.  Specifically, plaintiff

cannot meet any of the four factors required for entry of an injunction.  "A preliminary

injunction is 'an extraordinary remedy that may only be awarded upon a clear showing that the

plaintiff is entitled to such relief.'"  *Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011)

(quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 22 (2008)).  A plaintiff seeking a

preliminary injunction must establish (1) that she is likely to succeed on the merits; (2) that she is

likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in her favor, and (4) that an injunction is in the public interest. *Aamer v. Obama*, 742 F.3d 1023, 1038 (D.C. Cir. 2014).  The final two factors "merge when the Government is the opposing party" and are appropriately considered together. *Nken v. Holder*, 556 U.S. 418, 435 (2009).[8]

With regard to the first factor, the Amended Complaint must be dismissed for the various pleading failures discussed above, and plaintiff therefore cannot establish a likelihood of success on the merits.  Plaintiff also fails to provide sufficient evidence in support of her allegations to warrant entry of a primary injunction.  Aside from her own speculation, plaintiff provides no evidence to support her claim that she is under surveillance, and therefore she cannot meet the burden required for entry of preliminary relief. *See Food & Water Watch v. Vilsack*, 808 F.3d 905, 912 (D.C. Cir. 2015) (quoting *Bennett v. Spear*, 520 U.S. 154, 167-68 (1997)) (in "determining whether or not to grant [a] motion for preliminary injunction," the correct approach is to "evaluat[e] Plaintiffs' standing to bring their claims under the heightened standard for evaluating a motion for summary judgment").

---

[8] The D.C. Circuit has suggested, without explicitly deciding, that the "sliding scale" approach (pursuant to which a strong showing on one factor can make up for a weak showing on another) is foreclosed by Winter. *See Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011); *see also In re Navy Chaplaincy*, 738 F.3d 425, 428 (D.C. Cir. 2013) (requiring  proof that all four prongs of preliminary injunction standard are met before injunctive relief can be granted); *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288 (Kavanaugh, J., concurring) (noting that, post *Winter*, "the old sliding-scale approach to preliminary injunctions . . . is no longer controlling, or even viable" (internal quotations and citation omitted)).  In any event, the failure to demonstrate a likelihood of success on the merits alone is sufficient to defeat a motion for a preliminary injunction. *See Gilardi v. Sebelius*, No. 13-104, 2013 WL 781150, at *3 (D.D.C. Mar. 3, 2013).

With regard to the second factor, plaintiff has failed to show that she will suffer irreparable harm absent a preliminary injunction.  First, plaintiff been released from prison, thereby mooting her claims for equitable relief related to conditions of confinement.  *See supra* at 14-15.  Moreover, plaintiff's theories relating to irreparable injury appear related to her alleged fear of future surveillance.  Yet for the same reasons that her allegations are too speculative to establish standing, they are far too speculative to support a finding of irreparable injury sufficient to support injunctive relief.  *See supra* at 11-14; *see also Amnesty Int'l*, 133 S. Ct. at 1149.  Similarly, plaintiff's reaction to her alleged fear of surveillance, which she claims causes her to limit her expressive activities, *see* Am. Compl. ¶ 114, does not confer an irreparable injury.  *See Amnesty Int'l*, 133 S. Ct. at 1149. ("Respondents' contention that they have standing because they incurred certain costs as a reasonable reaction to a risk of harm is unavailing--because the harm respondents seek to avoid is not certainly impending.  In other words, respondents cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending.").

With regard to the final factors, the balance of the equities and the public interest also weigh against issuing a preliminary injunction.  Plaintiff's claims of ongoing surveillance are simply fanciful and unfounded, and no public interest supports the entry of any injunction in these circumstances.  But even if one were to take plaintiff's incredible allegations at face value and she actually were under ongoing FISA surveillance authorized by an Article III court, plaintiff has presented utterly no basis upon which this Court should enjoin the actions of the FISC.  *See*, *e.g*., *Winter*, 555 U.S. at 24 ("[C]ourts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction[.]").

## V.      CONCLUSION.

For the forgoing reasons, the Court should deny plaintiff's motion for a preliminary injunction and dismiss the Amended Complaint in its entirety.


Date: May 22, 2017                                   Respectfully submitted,

                                                     CHAD A. READLER
                                                     Acting Assistant Attorney General

                                                     CHANNING D. PHILLIPS
                                                     United States Attorney

                                                     ANTHONY J. COPPOLINO
                                                     Deputy Branch Director

                                                     /s/  Robin Thurston_____
                                                     Robin Thurston (Illinois Bar)
                                                     Trial Attorney
                                                     United States Department of Justice
                                                     Civil Division, Federal Programs Branch
                                                     Tel.:   (202) 616-8188
                                                     Fax:    (202) 616-8470
                                                     Email: robin.f.thurston@usdoj.gov

                                                     Mailing Address:
                                                     Post Office Box 883
                                                     Washington, D.C. 20044

                                                     Courier Address:
                                                     20 Massachusetts Avenue N.W.
                                                     Washington, D.C. 20001

                                                     *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I certify that on May 22, 2017, I mailed the foregoing to plaintiff Chelsea E. Manning at the forwarding address provided to me by the USDB.


/s/ Robin Thurston
ROBIN THURSTON