### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CHELSEA E. MANNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.  16-cv-02307-CRC |
| | ) | |
| DANIEL R. COATS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### DECLARATION OF THOMAS J. SCHMITT

Pursuant to 28 U.S.C. § 1746, I hereby declare as follows:

1.      I am currently the Deputy Commandant of the United States Disciplinary Barracks ("USDB"), Fort Leavenworth, Kansas.  This position is the senior civilian administrator of the prison.  I have been in this position for approximately eight years.

2.      I make this declaration in support of the Government's opposition to plaintiff's motion for a preliminary injunction and the Government's motion to dismiss.  This declaration will set forth the manner in which inmates may file grievances, and that there is no record of plaintiff filing a grievance related to her allegations that she was "being subjected to clandestine and intrusive electronic surveillance and physical searches, including computer network exploitation," Amended Complaint for Injunctive and Declaratory Relief and Damages ("Am. Compl."), ECF No. 9-1, at ¶ 1.

3.      Inmates are advised at the time of incarceration of their right to submit complaints and grievances to the facility commander or designated representative.  Complaints to the facility commander must submitted using a Military Correctional Complex (MCC) Form 510. *See* USDB Manual for the Guidance of Inmates ¶ 2-4 (attached as Exhibit A) ("Inmates communicate with staff by using an MCC Form 510, Inmate Request Slip. The MCC Form 510

is the only written format authorized for inmate communication with staff."); *see also* Army

Regulation 190-47, *The Army Corrections System* (June 15, 2006) ¶ 10-14 (attached as Exhibit

B).  Submission of MCC Form 510s is the process by which USDB inmates may pursue

administrative remedies regarding grievances.

    4.      These forms are centrally logged and maintained by the USDB Directorate of

Inmate Services in the inmate's Correctional Treatment File (CTF).  I have reviewed the

plaintiff's CTF containing all the plaintiff's submitted MCC Form 510s.  There is no record of

plaintiff submitting a MCC Form 510 to report a grievance pertaining to the allegations in the

Amended Complaint.  Specifically, there is no record of a MCC Form 510 submitted by

plaintiff relating to any alleged surveillance of plaintiff.  Nor is there a record of a MCC Form

510 submitted by plaintiff relating to any events occurring on October 10.

    5.      Plaintiff was released from the USDB on May 17, 2017, after serving her sentence

in accordance with President Obama's January 17, 2017, commutation order.


I declare under penalty of perjury that the foregoing is true and correct.  Executed in Fort

Leavenworth, Kansas on this 18th day of May, 2017.

Thomas J. Schmitt

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| CHELSEA E. MANNING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No.  16-cv-02307-CRC |
| | ) | |
| DANIEL R. COATS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

# Exhibit A:

# USDB Regulation 600-1

# *Manual for the Guidance of Inmates*

# (excerpt)

**United States Disciplinary Barracks**                    **USDB Regulation 600-1**
**Fort Leavenworth, KS**                                   **14 November 2013**

## MANUAL FOR THE GUIDANCE OF INMATES

**Purpose**
This regulation outlines opportunities, requirements and procedures within the United States
Disciplinary Barracks (USDB) and its satellite Trusty Unit (TU) to facilitate adjustment to
confinement; encourage active participation in correctional treatment programs and compliance
with all administrative standards.  Noncompliance may result in administrative disciplinary
action under the Uniform Code of Military Justice (UCMJ), administrative actions before a
Discipline and Adjustment Board (D&A Board) or a combination thereof.

**Policy**
This regulation outlines policies and procedures governing the confinement and compliance with
administrative standards set within the USDB, and is promulgated under the authority of the
Commandant.  Suggestions for changes to this regulation shall be sent to the Directorate of
Operations (DOPS).  Any exceptions to the policies in this regulation will be sent through the
DOPS to the Deputy Commandant for decision.

**Procedural Guidelines**
This regulation establishes the procedural guidelines to conform to the requirements set forth in
Department of Defense Directive (DoDD) 1325.04, Confinement of Military Prisoners and
Administration of Military Correctional Programs and Facilities; Department of Defense
Instruction (DoDI) 1325.07, Administration of Military Correctional Facilities and Clemency
and Parole Authority; Army Regulation (AR) 190-47, The Army Corrections System; and the
American Correctional Association (ACA) Standards for Adult Correctional Institutions 4th Edition
with 2012 Supplement.

**Applicability**
This regulation applies to all persons confined at the USDB.  For the purposes of this regulation,
the term "prisoner" and "inmate" are used interchangeably.

**Proponent**
The proponent for this regulation is the DOPS.

**References**
See Appendix A.

**Glossary**
See Appendix B.

* This regulation supersedes USDB Regulation 600-1 dated 1 July 2008.

**Chapter 2**
**Information and Guidance for Inmates**

**2-1.  Reception**

Upon arrival, inmates are housed in the Special Housing Unit (SHU) Reception Housing Unit for in-processing and orientation.  All inmates receive a mental health screening and medical and dental examination and have their photograph and fingerprints taken.  Inmates are informed of the opportunities available for self-improvement and are interviewed by various staff.

**2-2.  Commandant's Letter to Families**

Upon arrival, the Commandant sends a letter to the next of kin, advising of the inmate's safe arrival, correspondence procedures, procedures for depositing funds in the inmate's personal deposit fund, and visitation rules.

**2-3.  Deputy Commandant's Open Door Policy**

The Deputy Commandant sees inmates who have a relevant issue or concern.  It is the Deputy Commandant's intention to see everyone who needs to be seen and help everyone who needs help.  Before an inmate requests an appointment to see the Deputy Commandant, the inmate must ensure:

　　a.  The need to speak with the Deputy Commandant concerns an issue appropriate for resolution at the Deputy Commandant's level and the details in the request are sufficient to help the Deputy Commandant prepare for the meeting.

　　b.  The Housing Unit NCO or applicable staff member has been seen first; and if the issue is not resolved, it must then be addressed with the applicable directorate to attempt to resolve the issue.  If these steps have not been taken before a meeting with the Deputy Commandant is requested, the request is denied.  Issues shall be resolved at the lowest level possible.

**2-4.  Inmate Request Form**

　　a.  Inmates communicate with staff by using an MCC Form 510, Inmate Request Slip.  The MCC Form 510 is the only written format authorized for inmate communication with staff.  It is submitted to ask questions, request appointments and submit information.  Letters, documents and other written correspondence which inmates desire to provide to staff are attached to a properly completed MCC Form 510 for accountability and tracking purposes.

　　b.  Before submitting the MCC Form 510, consult this regulation.  If the issue is not answered within the MGI, or the content of this regulation is not understood, consult the Housing Unit NCO.

c. An MCC Form 510 is submitted to the Housing Unit NCO in the inmate's housing unit. The Housing Unit NCO researches and responds to the MCC Form 510 or forwards it to the proper authority.  MCC Forms 510 are addressed to and answered at the lowest level capable of handling the matter.

d. The MCC Form 510 is submitted to the Housing Unit NCO in sufficient time to allow for staff action.  Housing Unit NCOs log each MCC Form 510 and ensure the inmate concerned receives a response.  Inmates sign the MCC Form 510 acknowledging the answer.  Inmates may retain a copy for their records, as the original is filed in their Correctional Treatment File (CTF).

e. Only one MCC Form 510 is used per submission.  If additional space is required for the narrative portion, the back of the MCC Form 510 or a continuation sheet is used.  Continuation sheets should be plain, lined or unlined paper.  Only one MCC Form 510 on a given subject is processed at a time.  MCC Forms 510 on the same subject submitted to different addresses are returned with action taken on only one MCC Form 510.

f. Multiple submissions of MCC Forms 510 on the same subject may result in administrative disciplinary action.  MCC Forms 510 containing profanity, vulgarity, demands, threats, obscenity, a collective protest or petition, or language which a reasonable person would find offensive or harassing, are not processed and may result in administrative disciplinary action. MCC Forms 510 shall clearly state the problem and shall not be used to register frivolous or repetitive complaints or inquiries.  Check with the Housing Unit NCO if unsure where, or to whom to direct requests.

g. Non-Army inmates may direct MCC Forms 510 concerning service unique questions through their Housing Unit NCO to the appropriate MCC service liaison.

## 2-5.  Inmate Advisory Council

a. The Inmate Advisory Council (IAC) is established to provide avenues of communication and redress between inmates and the Commandant and staff.  The IAC provides a method through which group concerns may be raised to the staff.  Issues should be raised through the Housing Unit IAC Representative in advance of the weekly meeting.  Concerns need to be common to the inmate population as a whole, not individual inmate concerns; it is not a forum for individual inmate issues.  Quarterly, the IAC representatives meet and discuss any concerns with the Deputy Commandant and representatives from the facility directorates.

b. The DOPS will request computer accounts for IAC inmates who require computer access to complete their duties.  The ISS creates the account and sends to the DOPS the inmate's USDB Form 600-1-1, Inmate Network Assignment and Acceptable Use Policy (Appendix C).  Once the inmate has signed the USDB Form 600-1-1, the DOPS will return the signed form to ISS.  The inmate's computer account is enabled once the signed form is received.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CHELSEA E. MANNING,            )
                              )
            Plaintiff,         )
v.                            )        Civil Action No.  16-cv-02307-CRC
                              )
DANIEL R. COATS, *et al.*,     )
                              )
            Defendants.        )
_____)

# Exhibit B:

# USDB Regulation 600-1

# *Manual for the Guidance of Inmates*

# (excerpt)

**Army Regulation 190–47**

Military Police

# The Army Corrections System

**Headquarters**
**Department of the Army**
**Washington, DC**
**15 June 2006**

## UNCLASSIFIED

Headquarters
Department of the Army
Washington, DC
15 June 2006

*Army Regulation 190–47

Effective 15 July 2006

Military Police

# The Army Corrections System

By Order of the Secretary of the Army:

PETER J. SCHOOMAKER
*General, United States Army
Chief of Staff*

Official:

JOYCE E. MORROW
*Administrative Assistant to the
Secretary of the Army*

**History.** This publication is a rapid action revision. The portions affected by this rapid action revision are listed in the summary of change.

**Summary.** This regulation covers policies governing the Army Corrections System and implements DOD Directive 1325. 4.

**Applicability.** This regulation applies to the Active Army, the Army National Guard/Army National Guard of the United States, and the United States Army Reserve unless otherwise stated.

**Proponent and exception authority.** The proponent of this regulation is the Provost Marshal General. The Provost Marshal General has the authority to approve exceptions or waivers to this regulation that are consistent with controlling law and regulations. The Provost Marshal General may delegate this approval authority, in writing, to a division chief within the proponent agency or its direct reporting unit or field operating agency of the proponent agency, in the grade of colonel or the civilian equivalent. Activities may request a waiver to this regulation by providing justification that includes a full analysis of the expected benefits and must include formal review by the activity's senior legal officer. All waiver requests will be endorsed by the commander or senior leader of the requesting activity and forwarded through their higher headquarters to the policy proponent. Refer to AR 25–30 for specific guidance.

**Army management control process.** This regulation contains management control provisions and identifies key management controls that must be evaluated.

**Supplementation.** Supplementation of this regulation and establishment of command and local forms are prohibited without prior approval from the Office of the Provost Marshal General (DAPM), 2800 Army Pentagon, Washington, DC 20310–2800.

**Suggested improvements.** Users are invited to send comments and suggested improvements on DA Form 2028 (Recommended Changes to Publications and Blank Forms) directly to Office of the Provost Marshal General (DAPM), 2800 Army Pentagon, Washington, DC 20310–2800.

**Distribution.** This publication is available in electronic media only and is intended for command levels C, D, and E for the Active Army and D and E for the Army National Guard/Army National Guard of the United States and the United States Army Reserve.

## Contents (Listed by paragraph and page number)

**Chapter 1**
**The Army Corrections System,** *page 1*
Purpose • 1–1, *page 1*
References • 1–2, *page 1*
Explanation of abbreviations and terms • 1–3, *page 1*
Responsibilities • 1–4, *page 1*
Policy • 1–5, *page 2*
Army Corrections System objectives • 1–6, *page 2*
Reports • 1–7, *page 2*

**Chapter 2**
**Organizations and Functions,** *page 3*
Types of facilities • 2–1, *page 3*
Components of the Army Corrections System • 2–2, *page 3*

*This publication supersedes AR 190–47, dated 13 December 2005.

i

UNCLASSIFIED

instances, ACS facility commanders for the purpose of making available specific information about the facility, program, or activities may authorize media visits. Commanders' approval for media visits will be based on coordinated information from the public affairs officer and other staff members concerned regarding the impact of such visits. In authorizing these visits, it should be noted that approval given to news agencies requires equal consideration be given to all news agencies. DAPM will be contacted 72 hours prior to any programmed news media at an ACS facility.

*e. Briefings.* When authorized, news media representatives will be advised to make advance appointments for visits. Specific staff members of the facility will be designated as guides. Such staff members may respond to requests about facilities, programs, and activities but will refer all questions about policy and individual prisoners to the commander of the facility. The ACS commander of the facility or designated representative will brief personnel on the total operation of the facility prior to the tour, and ensure minimum disruption of facility operations.

*f. Members of Congress.* Visits to ACS facilities by Members of Congress and their staff are authorized per AR 1–20. Identifying credentials for members of Congress and written authorization for staff representatives of a member of Congress should be verified through the tenant installation prior to such visits.

*g. Official visits by service representatives.* Visit requests and requests for interviews of prisoners confined in ACS by service representatives will be forwarded to HQDA (DAPM) for approval.

*h. Individual or group orientation visits.*

(1) Individual and group orientation visits may be authorized by the ACS facility commander and will be coordinated with appropriate installation representatives.

(2) Regular tours are authorized as a means of informing the local community of the mission and functions of the facility. Care will be taken to ensure that the prisoner population is not put on display or subjecting them to ridicule or other forms of real or perceived public curiosity.

(3) Additional considerations prior to approval are—

(a) Requests for special tours/visits must be made in advance and include the stated purpose and intent of the visit.

(b) Approval of a special visit will cite time, date, and conditions of the visit.

(c) A senior staff member of the facility normally will be designated as guide for all tours.

(d) Individuals or groups approved for a visit to facilities will be informed that a violation of conditions of the visit will be cause for termination of the visit.

(e) The taking of still or motion pictures will be per paragraphs 10–12*a* and *b*.

(f) Tours will be planned to avoid occupied prisoner living areas.

(g) The personal histories and offenses of individual prisoners will not be discussed. Normally, individual prisoners will not be identified.

(4) Restrictions are not imposed on official visits except that they should be scheduled by appointment, where practical, to avoid any interference with work or training.

*i. Visits by civilian clergy.* Religious needs of certain prisoners may be such that chaplains (assigned to the facility) cannot fill them. In this event, the prisoner may consult the commander of the facility for assistance in securing visitation of civilian clergy.

(1) Clearance of civilian clergy to give religious counsel to prisoners must be obtained from the facility commander or a designated representative. Criteria for clearance by the facility commander or a representative include—

(a) An individual concerned must be the personal pastor of the prisoner or an authorized representative of the denomination of the prisoner.

(b) Civilian clergy must present proper credentials to attest to the fact they are actively engaged in religious work. The facility/installation chaplain should authenticate these credentials.

(2) Any member of the civilian clergy may request clearance per (1), above, for the purpose of visiting a prisoner of a specific parish or congregation.

## 10–14. Complaints and interviews

*a.* Prisoners will be advised at the time of their incarceration of their rights to submit complaints and grievances to the facility commander or a designated representative and the inspector general under provisions of AR 20–1.

(1) Complaints will be submitted to the facility commander or a designated representative on DD Form 510.

(2) The facility commander or a designated representative will promptly advise the prisoners on the action taken regarding their complaints.

(3) A copy of the notice prescribed by AR 20–1 will be permanently posted on the prisoner's bulletin board.

*b.* Facility commanders will establish procedures whereby individual prisoners can request interviews or assistance from responsible officials. Such procedures will be explained to the prisoner and will include a system, which is responsive to the prisoner's desires to be heard. Requests made by prisoners and responses taken or not taken will be recorded and made a part of the prisoner's correctional treatment file.

*c.* Prisoner's letters containing accusations, charges or complaints will be forwarded through proper channels to the

official who is empowered to correct the complaint or alleged wrong. Petitions or writs for release addressed to the proper authority will be forwarded through normal mail channels.

## 10–15. Smoking
ACS commanders will comply with the provisions of DODD 1010.1 and AR 600–63.

## Section IV
## Pay, Subsistence, and Gratuities

## 10–16. Pay and allowances
Prisoners will be paid per the provisions of their sentences. Such payments will be placed with the prisoner's personal fund account and held in safekeeping per DOD Financial Management Regulation, volume 5, chapter 27 Army Annex. Upon release, any money remaining in the prisoner's account will be returned to the prisoner.

## 10–17. Subsistence
   a. All prisoners normally will be supplied the full complement of eating utensils (for example, a knife, fork, and spoon). They will be provided with wholesome and sufficient food. The facility commander must approve nonissue of eating utensils for security or other reasons.
   b. Facility commanders will ensure that a qualified nutritionist or dietician ensures meals meet the nationally recommended allowances for basic nutrition and reviews the institution's dietary allowances at least annually. Institution food service supervisory staff verify adherence to the established basic daily servings and conducts menu evaluations at least quarterly.
   c. Food service staff will plan menus in advance and substantially follow the plan, ensuring that the planning and preparation of all meals take into consideration food flavor, texture, temperature, appearance, and palatability. Additionally, special diets as prescribed by appropriate medical or dental personnel will be available for prisoners, to include religious beliefs that require the adherence to religious dietary laws.
   d. At least three meals (including two hot meals) are provided at regular meal times during each 24–hour period, with no more than 14 hours between the evening meal and breakfast. Variations are authorized based on weekend and holiday food service demands, but basic nutritional goals must be met.
   e. Alternative meal service may be provided to a prisoner in segregation who uses food or food service equipment in a manner that is hazardous to self, staff, or other prisoners. Alternative meal service is on an individual basis, is based on health or safety considerations only, meets basic nutritional requirements, and occurs with the written approval of the facility commander and responsible health authority. The substitution period will not exceed 7 days. At no time will food be used as a form of punishment.
   f. Facility commanders will ensure meals are served under conditions that minimize regimentation, although there should be direct supervision by staff members.
   g. Facility commanders will establish a health and hygiene program that implements adequate health protection for all prisoners and staff in the facility and other persons working in food service. The program will include—
   (1) In accordance with Army regulations, food service personnel will receive a preassignment medical examination and periodic reexaminations to ensure freedom from diarrhea, skin infections, and other illnesses transmissible by food or utensils; all examinations are conducted in accordance with Army regulations.
   (2) In the event food services are provided by an outside agency, the facility has written verification that the provider complies with Army regulations regarding food service.
   (3) All food handlers are instructed to wash their hands upon reporting to duty and after using toilet facilities.
   (4) Prisoners and other persons working in food service are monitored each day for health and cleanliness by the food services supervisors or designated representatives.

## 10–18. Release gratuities
Discharged prisoners released from the service by punitive discharge, whose sentences include confinement, may be furnished the gratuities set forth below on release:
   a. Enlisted prisoners may receive a discharge gratuity as provided in DOD 7000.14–R, volume 7A, chapter 35, table 35–11.
   b. Prisoners separated from the service with a punitive discharge or an other than honorable discharge may be provided civilian outer clothing, if needed, in accordance with AR 700–84, paragraph 12–8.

## 10–19. Transfer and disposition of prisoners
   a. Except in those instances where suitable military ACS facilities are not available, all military prisoners will be incarcerated initially in military facilities. Authority to transfer prisoners to ACS or to Federal institutions is retained by DAPM. Cost of transportation and subsistence incurred in the transfer of a military prisoner from place of trial to initial